v. Athlete. Attorney Mr. Joel D. Gingras. Arguing on behalf of defendant Athlete, Attorney Mr. Jason S. Dreyfuss. Gentlemen, are you both ready to proceed? Counsel, then, when you're ready. Good morning. Good morning. And may it please the court. A normal traffic arrest has three phases to it. There's a traffic stop, there's a detention, which we would call a Terry stop, during which officers perform field sobriety tests, and then there's the arrest. Generally, the stop and the arrest are often challenged for like a probable cause. In this case, the defense elected only to challenge the stop. When Officer Johnson began his testimony, it became almost immediately apparent there was no traffic stop. Officer Johnson approached a car that had already been stopped. It was parked in a business parking lot at 2 o'clock in the morning. It was not moving. It was already stopped. I think it's well established that an officer may approach a person seated in a parked car and ask questions without that being labeled as a seizure. The trial judge during the hearing appeared to agree with that. At least five times during the hearing, she made comments to the effect that there is no stop here. I haven't seen a stop yet. I don't know what you're getting at. But somewhere during the rendering of her decision, she seemed to reverse her opinion and decided there was a stop, and she based it on one single fact, and that is that the officer had rather unwisely put in his police report and had also testified that he was making an investigative stop. Does it matter? No, Judge. Why not? Because the officer's subjective opinion of the nature of the encounter is completely irrelevant. You would agree, though, wouldn't you, that what begins as a consensual encounter can become a seizure, depending upon the conversation that takes place between the individual and the police officer? Yes, Judge. And I think the error that the trial judge made was, first of all, putting that in the police officer's frame of mind, in the police officer's opinion. It is whether a reasonable person would feel that they are not free to leave. But the court can still consider the police officer's judgment or what the police officer perceives in making a determination correct. It's a factor. Well, Judge, I don't agree with that. We completely ignore what's in the police officer's mind? Yes. I would say that I'd be selling insurance if it was up to what was in the police officer's mind, because police officers always believe they have probable cause, and they always believe they're right, and I've got a job. The police officer's subjective opinion is totally irrelevant, and I believe the men in Harlem in the Ware case indicate that. The question of whether a seizure takes place is in the mind of the – not even the specific defendant, but of a reasonable person, whether a reasonable person would believe that they were free to leave. And men in Harlem raises various factors that may be taken into consideration – the types of factors that may be consideration. The presence of multiple police officers, whether a police officer has drawn his weapon, whether he touches the defendant, whether he uses language or a tonal voice that would indicate that the compliance with his – Well, here the tonal voice was rather abrupt and loud, and is that a factor that we should consider? Justice Gergen, the only – on the record, the evidence is that the police officer says, well, first of all, that there was loud music going on. He testifies that he asked multiple times – he asked, didn't demand – he asked the defendant to lower his music, and he asked the defendant what he was doing there. According to Officer Johnson, not only did the defendant not lower his music and not answer his question, he didn't even appear to hear it. So I don't think there's any evidence at all, despite what defense has put in their brief, that there was any demands or commands or – demand? Whatever. The trial court's ruling seemed to evolve a little bit from the first hearing, whereas you indicated the trial court seemed to indicate that it was relying on the officer's subjective frame of mind. The motion to reconsider, the trial court did make a finding that the officer was commanding the person to turn down music. I – the trial court did find that, Judge, but I don't think it's supported by the record. I think when you read the record, the officer said, I asked him to turn down his music, and I asked him what he was doing there. That's all the officer said, and he said, I don't even believe the defendant heard me. If the officer was, in fact, commanding him, as the trial court indicated in the motion to reconsider, and that certainly could be – could amount to a seizure, could it not? Well, Judge, I think there's an additional factor that would – that would be – that would argue against that. And that is that it is not only the officer's action that counts. It – that it must be submitted to, the commands must be submitted to. For example, if an officer turns on his emergency lights, there's no seizure until the car submits to it, until the car pulls over. And it's the same thing here, that the officer can make a commandment if there's – if it's not – if there's no submission to the officer's show of authority, there's no seizure until there's a submission to the officer's show of authority. I don't believe there was a show of authority here. I think that was an erroneous finding, and I think the transcript would bear that out, that there were no commands, or at least there's no commands on the record. And by the time there was a seizure, the officer had a reasonable article of – reasonable article of suspicion? Judge, the record that you have before you – Well, because it adds it. Yes. There's no – there's no evidence there was even an arrest. So my contention is there was no stop. There was no seizure. The – there was nothing that the officer did. He approached on foot. He didn't show – have any show of authority. He didn't touch the guy. The only allegation, as I say, is that he made some commands, but leaving the transcript, he merely said, I asked him multiple times to turn down his radio, and I asked him – that's all. Even if there had been commands, by that time, the officer had already smelled the odor of alcohol and seen bloodshot eyes, or I believe that was the testimony. That's correct. So it would have – could have evolved into a Terry stop at that time. But the defense never contended that, that there was not – they contended merely that the officer's approach to the vehicle without – just on suspicion was sufficient to be a seizure. And I don't believe that's the law. This was a combined hearing for expedience, I assume? Judge, often there's a motion to quash and a petition to rescind statutory summary suspensions, and they're – one's civil and one's criminal, and they're different burdens. But at least in Lake County, they're often run together because – because usually the issue is the same. It's probable – almost always. It's probable cause for a stop, and it's probable cause for arrest. And they're the same issue both ways, so we run them together. But you're – there was an issue as to whether or not the prosecution merely cross-examined or presented evidence. Well, as Justice Burke points out – or Justice Burkett, I don't remember which – there was a point at which the hearing stopped rather abruptly and didn't – and didn't proceed. And as I said, there's no evidence on the record of even a arrest. So – I forgot your question. I'm sorry. Well, there was – in the briefs, there was this issue of whether or not the prosecution had an opportunity to present evidence as opposed to simply cross-examine. That probably is my fault. I thought it was so clear that there was no traffic stop, that that was the only issue, that there was no stop. And the defense said, my issue is a stop, and I said, there's no stop. And the judge was agreeing with me over and over and over again. And so I thought I preserved the right to present my case, but I suggested that we might just – if that's the only issue, that we might just decide that at the time. Probably procedurally, that could have been done clearer. You think? Yes, I do. Okay. And that's on me. But I do think – I thought I'd left enough room by saying that I had further evidence to present if the judge would rule against me and that I was less – I did nothing further at this time. But I think that even if – even without that, the court then and the court here has ample evidence of what transpired that day to make a determination. Any additional questions? Any final comments? I just said that I think that the judge erred in, one, relying on the police officer's mental position rather than the Mendenhall standard, that it is a reasonable citizen's belief that that was there and that – based on that. And the fact that I would agree was, based on the evidence and of the hearing, that there was no seizure, that there was a seizure, and that granting the motion was in error. Thank you. Okay.  May it please the court. First, this court should affirm the rulings of the circuit court because the court's finding that Mr. Duncan was seized by the arresting officer's commands is not against the manifest weight of the evidence. When did the seizure take place? The seizure took place when the officer approached and started ordering the defendant, commanding the defendant to turn down his music. So it wasn't just the approach. The command is what the key here is. Correct. So if you don't have the commands, if he's just asking him, you know, talking to him, saying, sir, please turn down the music, then you would concede there is no seizure. Correct. And I would concede that it's a fine line between what's a request and what's a command, but it's our position that that distinction is a factual finding. And so we believe that the appellate court is bound to defer to the trial court on that factual finding unless that finding is against the manifest weight of the evidence. Do we defer to the trial court's findings moments after the trial court heard the evidence or 49 days later on the motion to reconsider? So I think what happened in the short answer to your question is I think we need to look at the record as a whole. I think what happened is in the moment the judge was processing this as she heard it, she had not read the case at the time. She was reading the case while the party offer opening statements. I actually don't think we did know a good idea to lay out the legal issues, isn't it? Before you begin running a motion to suppress, we had stipulated to the judge that the only issue was the stop. I had filed my written brief motion maybe a week before. But yes, I think a best practice would be to do opening statements. Do you agree with counsel that the officer's characterization of the encounter as a stop is irrelevant? No, I disagree. Why not? Because at the end of the day, for a Terry stop to be justified, the officer has to have reasonable, articulable suspicion that this particular defendant or the person he's investigating is committing a crime, has committed a crime, or is going to commit a crime. But you only need that if there's a seizure. So Justice Burkett's question is, you know, how does that play into whether there's a seizure? Yes, if you have a seizure, then the officer has to have a reasonable articulable suspicion to seize the person. If there's never been a seizure, we don't even get to that point. So I think his question, but I think his question is, isn't it a reasonable person standard, a reasonable, innocent person whether they feel free to leave? It is. So then how does the officer's subjective process play into that? So it's not our position that if an officer says something is a seizure in the report, that it's automatically a seizure. What the courts need to do, and what the trial court did in this case, is listen to the testimony and properly apply the law from cases like Mendenhall. And that lays out a number of factors that courts should consider when deciding whether something is a seizure. And the one in this case, the one that the court used to make its finding that Mr. Duncan was seized, is the fourth one, the use of language or tone of voice, indicating that the officer's request might be compelled. And the circuit court stated, quote, this defendant was absolutely not free to leave. Well, your client ignored the officer's, if you characterize it as a command, your client ignored his command. He didn't turn the music down. Correct. So where's the evidence that he didn't feel free to leave if he's ignoring the officer's commands? He stayed put. He remained, as the record indicates, he remained there. But there was nothing restricting his movement. There was no, he wasn't blocked in. You point to a single factor and then you try to argue that all these other factors are now present. The officer made a command that your client ignored. So how is that a stop? Because when you're evaluating whether something's a stop, just like Justice Burke mentioned, it's an objective standard. And so what this court needs to decide is whether this trial court's findings that this officer made these commands to Mr. Duncan, if a reasonable person would interpret those commands as such that could not be ignored, compelling his compliance and telling the defendant that he was not free to leave. Now you mentioned in your brief, you characterized the officer's testimony regarding the noise ordinance as bogus. Why is that bogus? Was there any other evidence offered that there is not, was there evidence offered that there is no city ordinance? The court found that not credible. What were we doing to court's ruling? Was there any other evidence? It was only based on the officer's testimony. But again, the city did not present a copy of the ordinance at the original hearing. They didn't present a copy at the motion to reconsider. I know that the city urges or urged the trial court to take judicial notice. But as this court has said in McHenry v. Tomah, trial courts can't take judicial notice of ordinances if it hasn't been tendered. And so it was never tendered to the trial court in this situation. So all she had was the officer's testimony. And that wasn't enough to be able to evaluate whether, in fact, there was reasonable suspicion that Mr. Duncan was in violation of this mysterious or missing statute. With respect to... I do want to get back to this command because, I mean, it seems like it kind of turns on this. You started to quote the trial court at the motion to reconsider, saying that the officer approached and started ordering commands to the defendant. Now, and again, I get back to that's 49 days after the trial court heard this testimony. And the issue is whether that factual finding is against the manifest way of the evidence. But right after the trial court heard this testimony, the trial court says at R-15 from that hearing, but right now I have him walking up to an open window and talking with the guy. And then at R-18, the trial court is saying, so far we just heard him talking with the gentleman through an open window. Later, I mean, he's just talking with him right now. And then finally at R-17, the trial court actually states, he being the officer, he didn't even do an order of commanding. He asked him to turn down the music and the music wasn't turned down. So I'm just trying to, you're relying on a factual finding. And we have absolute opposite factual findings made moments after the trial court heard this testimony. So how do we look at that? Sure. So I think that these cases sometimes are not easy. The judge is hearing a lot of facts in the moment. This judge conceded she hadn't read the case. It's unclear if she had read the brief. And so is she sitting there trying to take all this live testimony? And, yes, she made those statements. I'm sorry, you didn't have any opening statements, but you had submitted briefs? Yes. On this issue prior to the hearing? It was my general motion to suppress. It did not focus singularly on the commands. Okay. So to respond, I think at the end of the day we need to look at where the court ended up. And so when the court has some time to think about it, to deliberate a little bit, and reflect during that period of time between the motion to reconsider, we believe that the judge got to the right place. Who testified to the commands? The officer testified that he repeatedly commanded. He didn't say command. He did not say command. He said, I asked him. Correct. But, again, it's a fine line between request and command. Someone can say, come here. Or they can say, come here. And that's something that really only the trial court can judge the demeanor, the body language. But he wasn't asked how did you, how did you, what was your total voice? How did you say this? He simply said, what happened? And he said, I walked over, the music was loud, and I asked him, please turn the music down. He never, nobody, you know, the defendant didn't testify and said I was commanded to turn the music down. And the officer never said he commanded him to turn the music down. Nobody ever asked him what the total voice was. I mean, there's, like, no evidence in the record of a command that I could see. Well, it's not our, it's our position that the officer doesn't need to say I commanded this person. We believe that the trial court, as the finder of fact, having a live witness sitting there, being able to evaluate the officer, hear his language, hear his demeanor, look at his body language, all of those things are. Doesn't it matter what he said when he was on the street, not the manner in which he testifies? Yes, but he's describing what he said on the street. I mean, we obviously, there was no video, no recording of this, so all we have is the officer's live testimony. And so we believe that it's up to the trial court to evaluate that testimony as he's saying what happened on the street and make that factual finding as to whether what he's testifying to was a command. Go ahead. Does it matter his tone of voice on the street when he's trying to be heard over loud music, music loud enough that made him approach in the first place? Sure. Don't you have to take it in the context in which the words are spoken? Yes, but I don't know that that would change it from not being a command. If someone's screaming at you, regardless of whether there's music or not, you're going to be taken aback. And so I guess it's something to consider, but whether he's screaming, I think, you know, over loud music would be important. Does it matter if, based on what we have here, that it appears your client never heard those words, whether they were an ask or a command? No, because it's an objective analysis as to whether a reasonable person in defendant's position would believe that. All right. If someone's standing there and I can't hear them, how does their tone of voice matter? If you absolutely can't hear them, then, well, okay, let me strike that. I mean, the only evidence in the record appears to be from the officer who says, it appears he didn't hear me. We have nothing to the contrary, so shouldn't we assume then that? There's some other facts that the trial court could have based its decision that he at least knew he was present. I mean, he's standing right at the driver's side door. But she didn't make those findings? Not expressly. Right. Well, do you have a case that says the presence of a police officer is a stab? Just in and of itself, no. Well, what else is there? In this case. In this case. So in this case. What else is there? There's the commands of the officer. Okay. What else? What else is there? We don't have anything else. Okay. How do you square this case with Ludeman? Sure. We believe that Ludeman is different in several important ways. And because these things are very factually. How is he? Okay. So first, in that case, the defendant had alcohol on his breath. In this case, all the officer testified to is that there was alcohol and odor emanating from the car. How many people were in the car? We don't know. We don't know. There's no evidence of whether or not there were other people in the car. Correct. The other distinguishing fact is that in plain view in Ludeman, there was a beer bottle. There's no such incriminating evidence in plain view in this case. Okay. We're not. Now you're getting into reasonable suspicion. I'm asking you what in Ludeman suggests that this is a seizure. The application of the Mendenhall factors. That's what the court. What Mendenhall factors are present in this case? The command and language used by the officer. The language used by the officer was I asked him to turn the music down. Which the trial court characterized as a command. And that is our position is a factual finding that should be left up to the trial court. Despite the fact that there was actually no evidence of any kind that the officer ordered the defendant to turn the music down. Again, we believe that the distinction between a request and a command is a fine line. That is up to the trial court hearing the live testimony. And is in the best position to make that factual finding. That the trial court doesn't make. You're suggesting the trial court made a credibility finding. Yes. Well, they certainly made a credibility finding with respect to the noise ordinance. They did not find that credible. That was an express finding in their ruling. With respect to the commands, I don't know that it necessarily goes to credibility per se. But just their ability to sit and evaluate the demeanor, the presence, the body language of the officer giving the live testimony. With respect to this, this court raised the issue of the stop turning into a Terry stop at some point. And I want to address that because the police officer originally had said, well, closed business, empty parking lot. I was going to investigate. The fact of the matter is, is the officer was impeached on that issue. This was not a closed business. It was open. It was a 24-hour tow lot. It was 2 o'clock in the morning. They have cars coming in and out, both patrons and workers at all hours of the day. So the judge didn't find that aspect credible rightly. And that's consistent with this court's finding in People v. Cordero. That the mere presence of a defendant's car in the parking lot of a closed business does not justify a Terry stop. And as the court correctly found before the stop, there was absolutely nothing suspicious about what the defendant was doing. Do you have any final remarks? We don't. For the reasons stated today and the reasons in our brief, we ask that you affirm the decisions of the trial court. Thank you. Thank you very much. Thanks. Do you wish to offer a reply? I think there is a difference between a request and a command. That's for sure. The counsel said if someone were screaming at you, you'd be taking it back. But there's no evidence that he even heard him. I think he had to ask him to turn the music down before he even made a command, if that is what he intended to do, because the person couldn't hear him. And there's no evidence on the record, actually, that the defendant even saw the police officer. There's nothing on the record to indicate that even the police officer was standing there. And if you can't hear the police officer and you don't know he's there, I think it's impossible to say that a reasonable person under those circumstances would feel that they were detained. So, Judge, we would ask you to reverse. All right. Well, gentlemen, thank you both very much for your arguments. We will be in recess until the next hearing.